SMITH *vs.* THE CENTRAL RAILROAD AND BANKING CO.

1. After the Supreme Court, upon review of both law and facts, has held that there can be no recovery because of the gross negligence of the plaintiff in exposing himself to danger and in failing to avoid the consequences, it is not error for the superior court, on a second trial, to award a nonsuit, the evidence for the plaintiff being precisely the same as that submitted by him on the former trial.

2. The case of *Central Railroad vs. Smith*, 78 *Ga.* 694, again considered with reference to the plaintiff's failure to shun the consequences of defendant's negligence, and nonsuit upon that ground sustained.

September 23, 1889.

*Res adjudicata.* Railroads. Negligence. Nonsuit. Practice. Before Judge RICHARD H. CLARK. Clayton superior court. September term, 1888.

Reported in the decision.

STEWART & HODNETT, J. T. SPENCE and R. T. DORSEY, for plaintiff.

W. L. WATTERSON and HALL & HAMMOND, for defendant.

BLECKLEY, Chief Justice.

The former review of this case (*Central Railroad vs. Smith*, 78 *Ga.* 694) was based upon the refusal of a new trial which was applied for by the company, Smith having obtained a verdict for $4,800 damages. The motion for a new trial was predicated not alone upon questions of law ruled upon by the court in the progress of the trial, but upon the insufficiency of the evidence to warrant a recovery. Passing upon the whole case, this court held that, "as matter of fact, to walk along the middle of a railroad track between crossings when it is dark, and without knowing and remembering

γ 82-51

whether a train is due or not, and without looking in both directions for trains that may be due, and without listening attentively and anxiously for the roar and rattle of machinery, as well as the sound of bell or whistle, is gross negligence," and that the evidence did not warrant the verdict. A new trial was had, when the same evidence was submitted by the plaintiff on which he had previously sought and obtained a verdict; and the court, properly respecting the decision which we had rendered, touching the insufficiency of that evidence, granted a nonsuit; and this judgment of nonsuit we are now called upon to reverse.

1. Had we not, by holding up the case for more thorough and elaborate treatment, found leisure for studying it a second time in all its details, we might very well have disposed of it by a simple reference to the report and opinion in the 78 *Ga.* The necessary logical outcome of our previous ruling was a defeat of the plaintiff on a second trial, provided his evidence was the same as on the first. The court may not have been obliged by law to grant the motion to nonsuit; but there can be no reasonable doubt that the presiding judge was authorized to do so, for he had before him a solemn decision of this court holding that a recovery upon that evidence was not sustainable. Independently of our decision, it was in the power of the court to grant the nonsuit, though to grant it may not have been obligatory. *Tison vs. Yawn*, 15 *Ga.* 491; *Cook vs. W. & A. R. R. Co.*, 69 *Ga.* 619; *Bell vs. W. & A. R. R. Co.*, 70 *Ga.* 566; Donaldson *vs.* Rwy. Co., 21 Minn. 294; Rothe *vs.* Railroad Co., 21 Wisc. 258; O'Donnell *vs.* R. Co., 8 Central Law J. 414.

2. But our further study of the case prepares us to deal with it again *de novo;* and we do so without committing ourselves, however, to repeat a like superfluous

treatment of any case hereafter. Smith was a man 33 years of age, residing in or near Jonesboro. For a period of 15 years he had clerked in a store in that town, his employment as clerk ceasing about a year before he was hurt. He thus had opportunity to be well acquainted with the locality, and there is no intimation that he was not familiar with it, or that he was deficient in any of his faculties or senses. Shortly before daylight on February 7th, 1885, he walked from a street-crossing in the town of Jonesboro upon the railroad track, for the purpose of going about 200 yards down the track to a house where he had business. He had proceeded 65 or 70 yards when the train, coming up from behind, struck him and inflicted a serious injury to his person. He was walking in the middle of the track, and the first he knew of the train it was right at him. He made a break to get off, but was too late. He could not get out of the way. He testified as his own witness, but gave no reason or explanation, and none appeared from any other testimony, as to why he did not listen or look, or as to what was occupying his attention, or as to there being anything visible or tangible which could have occupied it. He introduced several other witnesses, one of whom stated that it was a cold morning, and that the noise of the train could be heard a long way off; another stated that he heard it a quarter of a mile; another that he heard it a half mile above the depot and all the way through town; another that he heard it three quarters of a mile before it got to the crossing. All concurred that the speed of the train was very high, some estimating it as high as 40 miles, and one at 45 miles an hour; none of them at less than 25 miles an hour. The house to which the plaintiff was going could have been reached by a good road running down on one side of the railroad, and by

another, not so good, on the opposite side. In addition to these ways of access, there was on each border of the track upon which he walked, a smooth way, that on one side being by actual measurement seven, and that on the other ten feet wide. The train was the regular five o'clock passenger-train, and was that morning on its schedule time.

It is beyond dispute that the railroad company was negligent. It failed to give the signals, to check the train at public crossings, and was running at a speed altogether too high. Enough and more than enough appears to fix liability upon the company if only its negligence were involved. But the evidence makes the plaintiff's negligence quite as apparent as that of the company; not only so, but it shows in the fullest and clearest light that by the use of ordinary care he could have avoided the consequences to himself of the company's negligence; and that being so, the code, §2972, declares in express terms that he is not entitled to recover. This rule of law it is that bars him and renders a recovery impossible. It is idle to try to evade the rule by dwelling upon the negligence of the company, for unless there is negligence of the company which would otherwise render it liable, the rule we are considering would have no place in the law. It is only where there is negligence the consequences of which are to be shunned, that the plaintiff is charged with the duty of shunning them if he can do so by the exercise of ordinary care. His failure in this respect does not stop with reducing the amount of his damages, but defeats a recovery altogether. *Western & Atlantic Railroad vs. Bloomingdale,* 74 *Ga.* 604, and cases cited in the able opinion of BRANHAM, J. Nor is this mere Georgia law dependent on a local statute, but the principle prevails elsewhere. Illinois Central R. R. Co. *vs.* Heatherington, 83 Ill. 510;

Railroad Co. *vs.* Houston, 95 U. S. 697; Donaldson *vs.* Railroad Co., 21 Minn. 293; Harty *vs.* Railroad Co., 42 N. Y. 463; O'Donnell *vs.* Railroad Co., 8 Cent. L. J. 414; 2 Sherman & Redf. Neg. §§480–2; 1 Thomp. Neg. 449 *et seq.*, notes.

In all the cases cited by the able and zealous counsel for the plaintiff there were complicated facts, or else some explanation either furnished or suggested by the evidence which might serve to account in whole or in part for the apparent failure by the party injured to protect himself,—something from which the jury might by possibility infer that the attention was naturally and justifiably withdrawn for the moment from the danger or the cause of danger. We except, of course, the two cases of *Western & Atlantic Railroad Co. vs. Main,* 64 *Ga.* 649, and *the same vs. Jones,* 65 *Ga.* 631; for these were not cases of injury to the person, but to animals. In them no question of diligence on the part of the owners arose, and the law lays no duty of diligence whatever upon cattle and horses. In *Hankerson vs. Railroad Co.,* 59 *Ga.* 593, the plaintiff suddenly became unconscious, and while in that condition was injured, and did not recover consciousness until some time afterwards. *Vickers vs. Railroad Co.,* 64 *Ga.* 306, was the case of a child; *Fraser vs. Railroad Co.,* 75 *Ga.* 222, was the case of a woman; in both there were special circumstances rendering the question of diligence somewhat doubtful. They were very weak cases (and so pronounced) for submission to a jury, but the special facts made it proper to give them that direction. *Atlanta & West Point Railroad Co. vs. Wyly,* 65 *Ga.* 120, involved the question of prudence in attempting to pass over a street-crossing with a dray; and the report states expressly that the evidence was conflicting. The cases of *Central Railroad Co. vs. Freeman,* 66 *Ga.* 170, *Cook vs. Railroad,* 69 *Ga.*

619, *Pittman vs. Railroad*, 73 *Ga.* 325, *Redding vs. Railroad*, 74 *Ga.* 385, were cases in which the injured persons were engaged in the performance of duties as employés, duties calculated more or less to divert their attention from the causes of danger. In *Georgia Railroad vs. Carr*, 73 *Ga.* 557, there was no intrusion upon the railroad track, and no cause to apprehend the particular danger which produced the disaster, namely, the blowing of the locomotive whistle, until it was too late to shun it. So it is stated in the opinion, p. 560. In *Brunswick & Western Railroad vs. Hoover*, 74 *Ga.* 429, the injury occurred at a public crossing, and a whistle was blown on another railroad, which attracted attention and perhaps caused mistake. There was also a ditch which was mentioned by the court as an obstacle to escape, in discussing the plaintiff's diligence. In *Georgia Railroad vs. Williams*, *Id.* 723, and *Western & Atlantic Railroad vs. Meigs*, *Id.* 857, other trains were near, and the injured person's attention might have been directed to them and thus withdrawn from the danger that threatened. In *Jackson vs. Railroad*, 77 *Ga.* 82, in which the injury resulted from the breaking of something connected with a derrick, the plaintiff acted under orders, merely yielding his own apprehensions founded on report to the assurance of the person in charge of the work.

The present is distinguishable from all these cases; for the plaintiff, although a witness himself, and though in full possession of his faculties, and recollecting all that transpired, gives no hint of any reason why he walked upon the track when he might easily and safely have walked on either side of it; or why, being upon it, he exercised no diligence whatever in listening, looking for or thinking about the train. He does not pretend ignorance that it was train time, or suggest any

mistake or misapprehension on the subject. He testifies simply to the physical facts, and there leaves the matter. From these facts no enlightened, unbiased jury could rightly draw any inference other than that he was grossly negligent, and that by the exercise of any reasonable diligence whatever, he could and should have avoided injury. When it would be impossible for a jury rightly to arrive at but one conclusion, the court is not bound to take the opinion of a jury, even upon a question of negligence. When they are consulted, they are the sole and exclusive judges, as has been held in many cases, notably in *Richmond & Danville Railroad vs. Howard,* 79 *Ga.* 44, and *Killian vs. Railroad Co., Id.* 236. But this rule does not mean that the court cannot adjudicate as a question of law, on a motion for a nonsuit, that there is nothing for the jury to try. In adjudicating motions for nonsuit, a court must necessarily have the same power over questions of negligence as over other questions of fact. Otherwise, cases of this character would be so exceptional that they would have to be submitted to a jury, however deficient the evidence might be. The law of nonsuit, as to them, would be a nullity.

We have at least done this case full justice in giving it patient and protracted consideration, and with full confidence in the correctness of our conclusion, we leave it where the judgment of the court below placed it.

Judgment affirmed.